FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2006 MAR 13 PM 2: 21

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

UNITED STATES OF AMERICA )
)
) CASE NO. CR505-011
v. )
)
ANTHONY BOOTH BATEMAN )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Anthony Booth Bateman ("Defendant") is charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant filed a Preliminary Motion to Suppress Evidence, and the Government filed a Response. The undersigned conducted a hearing on October 25, 2005, at which Defendant and Bobbie Jean Bateman ("B. Bateman"), Defendant's wife, testified on behalf of the defense. Sergeant Austin Eugene Nipper, a police officer with the City of Waycross, Georgia, and Agent Damon Winters, a Ranger with the Department of Natural Resources ("DNR"), testified for the Government. The parties have filed post-hearing briefs.

### FINDINGS OF FACT

The credible testimony at the evidentiary hearing established the following:

Sergeant Nipper, the principal agent in the investigation of the Defendant, received information that marijuana was being grown behind the Defendant's house.

AO 72A
(Rev. 8/82)

(Tr. at 36.) Prior to the incident in question, Nipper investigated the area and located marijuana plants on a wooded line between Defendant's property and adjacent property owned by a timber company. (Id.) Defendant and B. Bateman have lived on this property for approximately twenty years. Defendant's property is surrounded by a wire fence secured by wooden posts, which have been in place for approximately two (2) to three (3) years.

Several days later, Nipper, accompanied by Agent Winters,[1] returned to the property with surveillance equipment to record individuals working with the marijuana. (Tr. at 37.) According to Sergeant Nipper a search warrant was not secured because he was uncertain that the marijuana plants belonged to the Defendant. The property surrounding the Defendant's property is a dense, heavily wooded area. Sergeant Nipper and Agent Winters traveled approximately a quarter-mile through the woods, waded through water ankle to knee deep, cut a trail through the woods, and arrived at a pasture encircled by a fence. (Tr. at 27, 41.) From their position, they could view the pasture, a portion of the back side of the house, and could see marijuana plants inside the fenced area. No fence extended between Defendant's mobile home and the marijuana. According to Sergeant Nipper and Agent Winters, they never crossed the fence line and believed that they were on the lumber company's property at all times. (Tr. at 39, 52.) The officers were given no indication that they left the lumber company's property because the marijuana plants were in pots along the fence line. Agent Winters did not see any "no trespassing" or "no hunting" signs. Neither Sergeant Nipper nor

---

[1] Agent Winters has been a Department of Natural Resources Agent for eighteen years and is assigned to Pierce County, Georgia.

2

Agent Winters had permission from the lumber company, or the hunting club which leased the property, to enter its grounds. (Tr. at 46-47.)

During the installation of their equipment, Agent Winters saw Defendant running toward him with a pistol. (Tr. at 53.) Agent Winters drew his gun and advised Defendant to drop his weapon. (Id.) Defendant complied with the Agent's instructions to drop his weapon and get down. (Tr. at 54.) Based on his memory, Agent Winters stated he was approximately 150 yards from Defendant's residence when this occurred. (Id.) His report, filed shortly after the incident, stated that he was located within a few yards of the marijuana patch.

After the incident, Defendant returned to the area and found that a trail had been cut through the woods and a portion of the fence was "stomped down." (Tr. at 30-31.) Defendant did not see the officers stomp down the fence, but found a bag containing charcoal and a coke can on this trail. Sergeant Nipper carried a bag with charcoal to absorb any ground moisture surrounding the electronic equipment they were to bury. Defendant stated that the marijuana plants could not have been seen from any location outside of his property.

B. Bateman took photographs, which the Defendant has entered as exhibits, shortly after the incident; however, she was not present during the incident in question and has no personal knowledge of the officer's whereabouts or actions.

## ISSUES

Defendant contends that evidence gathered by Government officers on his property, including the 9mm handgun, should be suppressed because it was obtained in violation of his Fourth Amendment protection against unreasonable search and seizure.

3

Defendant avers that the warrantless search of his property does not fall within the open fields doctrine. Ostensibly, Defendant contends that because the officers' search of his property is illegal, the 9mm handgun officers seized from him should be suppressed as "fruit of the poisonous tree."

The Government alleges that officers observed the marijuana growing in plain view from their observation point "on the wood line." The Government contends that the Defendant's fence does not extend through the thicket from which the officers approached and that they could not have known if they crossed any property lines. The Government avers that the area from which the officers approached is the uninhabited property of a third party and subject to the open fields doctrine.

## DISCUSSION AND CITATION TO AUTHORITY

Distinguishing between curtilage and an open field is a question of fact determined by two elements: (1) whether the defendant has a reasonable expectation of privacy; and (2) whether society deems this expectation reasonable. See Katz v. United States, 389 U.S. 347, 350, 88 S. Ct. 507, 510, 191 L. Ed.2d 576 (1967). "The term 'open field' is a term of art that includes areas which are neither 'open' nor 'fields'" and may include "secluded wooded areas." United States v. Seidel, 794 F. Supp. 1098, 1102 (S.D. Fla. 1992) (citations omitted). There is no expectation of privacy in an open field; thus, the protections afforded by the Fourth Amendment do not extend to those areas factually deemed to be an open field. Oliver v. United States, 466 U.S. 170, 140 S. Ct. 1735, 1742-43, 80 L. Ed.2d 214 (1984). The open fields doctrine allows the warrantless entry and subsequent search, by law enforcement officials, of an area designated to be an open field. Seidel, 794 F. Supp. at 1102.

4

AO 72A
(Rev. 8/82)

In contrast, curtilage is the area around a home which "harbors those intimate activities associated with domestic life and the privacies of the home." United States v. Dunn, 480 U.S. 294, 301 n. 4, 107 S. Ct. 1134, 1140 n. 4, 94 L. Ed.2d 326 (1987). Whether an area is considered to be curtilage and afforded Fourth Amendment protection depends on four factors: (1) the proximity between the area claimed to be curtilage and the home; (2) the way the area claimed to be curtilage is used; (3) whether the area claimed to be curtilage is part of an enclosure surrounding the home; and (4) the steps the resident has taken to protect the area from observation. Id.

In the instant case, the area in which the officers discovered the marijuana plants is not part of the curtilage of the home, and is best categorized as an open field. Defendant had no reasonable expectation of privacy in the portion of his property where the officers observed the marijuana plants. Pictures of the Defendant's property indicate an open, spacious area behind the Defendant's home. The Defendant's attempts to exclude the general public from his property through a wire fence are inconsequential. See Seidel, 794 F. Supp. at 1102 (stating that "a party's attempt to erect fences or barriers to keep the public out of an open field is of no account."). Officers testified that the marijuana plants were visible from their observation point outside of Defendant's property line. The credible testimony by Nipper and Winters indicates that the marijuana was located in an area near the border of the property. Nipper and Winters were unaware of any discernable distinction between their observation point and Defendant's property. Further, Defendant did not take any measures to protect the area from observation; the natural vegetation surrounding the property alone does not constitute an affirmative act by the Defendant to protect his

5

property from observation. Despite Nipper and Winters' extensive steps to observe the marijuana, they did not violate Defendant's Fourth Amendment right against unreasonable search and seizure. Accordingly, the weapon seized from Defendant should not be suppressed as "fruit of the poisonous tree" and any other evidence from this search should be admitted.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Preliminary Motion to Suppress Evidence (Doc. No. 20) be **DENIED**.

So **REPORTED** and **RECOMMENDED**, this 13th day of March, 2006.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)